UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE HARDIMAN,

    Plaintiff/Counter-Defendant,

v.

BRIAN J. MCKEEN AND MCKEEN
& ASSOCIATES, P.C.,

    Defendants/Counter-Plaintiffs,
_____/

Case No. 19-12949

Hon. George Caram Steeh

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM (ECF NO. 25)

Before the court is Plaintiff/Counter-Defendant Eugene Hardiman's motion to dismiss counterclaim, which has been fully briefed. Pursuant to L.R. 7.1, the court has determined that its decision would not be significantly aided by oral argument. For the reasons explained below, Hardiman's motion is granted in part and denied in part.

BACKGROUND FACTS

Hardiman filed this breach of contract action to enforce an attorney referral agreement. Hardiman, an Illinois attorney, referred a medical malpractice case to Michigan attorney Brian McKeen and McKeen & Associates, P.C. ("McKeen"). McKeen agreed to pay Hardiman a referral

-1-

fee of one-third of the attorney fees recovered.  McKeen filed the suit on behalf of Yen Tran, as next friend of Vinh Tran, against William Beaumont Hospital in Oakland County Circuit Court.  The Trans obtained a jury verdict of over $130 million against Beaumont in September 2018.  The parties subsequently reached a settlement, which was approved by Circuit Judge Phyllis McMillen in July 2019.

Hardiman alleges that McKeen did not respond to his inquiries about the status of the case and then refused to provide him with a copy of the settlement agreement.  To protect his referral fee, Hardiman served a notice of attorney lien on Beaumont and McKeen on August 21, 2019.  McKeen informed Hardiman that Mrs. Tran objected to payment of the referral fee, claiming that Hardiman had engaged in malpractice by "sitting on" the case for years before referring it.  Hardiman contends that he is entitled to one-third of the attorney's fees recovered in the *Tran* case, pursuant to the referral agreement.

After receiving Hardiman's lien notice, Beaumont refused to tender the settlement check to the Trans and McKeen.  McKeen states that he offered to place the disputed amount of the referral fee in escrow, but that Hardiman would not agree.  McKeen then sought relief from the state court.  At a hearing, which Hardiman did not attend, Judge McMillen instructed the

parties to submit a stipulated order that discharged Hardiman's lien as to Beaumont, ordered Beaumont to tender the settlement check, and ordered McKeen to deposit Hardiman's claimed funds with the court clerk.

Before McKeen and Beaumont could submit their stipulated order to Judge McMillan, Hardiman filed this breach of contract action. Beaumont proposed that the parties agree to an order allowing the disputed funds to be deposited in an interest-bearing account. Hardiman took the position that the full amount of the contingency fee should be placed in a joint account. This court directed the parties to agree to a protective order (allowing Hardiman to review the settlement agreement), and an order placing the amount of Hardiman's referral fee in a joint account. McKeen alleges that Hardiman was not cooperative in creating a stipulated protective order and in proposing a custodian for the disputed funds. McKeen again sought court intervention, filing an emergency motion to discharge Hardiman's lien and distribute the settlement funds. At the hearing, the parties agreed to a protective order, as well as an order calling for a joint account for the disputed funds. Beaumont tendered the settlement check; the Trans received their funds; McKeen received the undisputed portion of the contingency fee; and the remaining amount (1/3 of the contingency fee) was placed in a joint escrow account.

Subsequently, McKeen filed a counterclaim against Hardiman for tortious interference with a business relationship, abuse of process, and declaratory judgment. McKeen contends that Hardiman tortiously interfered with his relationship with the Trans and Beaumont by refusing to release his lien or accept McKeen's offer to place the funds in an escrow account. McKeen also alleges that Hardiman's refusal to release the lien constitutes abuse of process. McKeen seeks a declaratory judgment that Hardiman is not entitled to his referral fee.

## LAW AND ANALYSIS

### I. Standard of Review

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks dismissal based upon the plaintiff's failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal

theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

II. Tortious Interference

"The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 323 (2010) (citation omitted).[1] The alleged interference must be intentional and improper. *Auburn Sales, Inc., v. Cypros Trading and Shipping, Inc.*, 898 F.3d 710, 715-16 (6th Cir. 2018) (applying Michigan law). Intentional interference "means that the defendant's purpose or desire is to cause an interference with a contract or business relationship." *Id.* at 716. "[T]he 'improper' nature of an interference is shown by proving either (1) conduct that is inherently wrongful, or (2) conduct that is inherently legitimate, but which becomes wrongful in the context of the defendant's actions and malice." *Id.*

---

[1] The court applies Michigan law in this diversity case. *See Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 644 (6th Cir. 1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

-5-

at 716-17. When the defendant is "motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS Clinical Labs. v. Blue Cross & Blue Shield of Michigan*, 217 Mich. App. 687, 699 (1996).

McKeen alleges that Hardiman tortiously interfered with his business relationship with the Trans and Beaumont by mailing the notice of lien. Upon receiving the notice, Beaumont declined to tender the settlement check to the Trans and McKeen unless Hardiman agreed to discharge his lien. In return for the lien discharge, McKeen offered to place the disputed amount in an escrow account. McKeen alleges that Hardiman's unjustified failure to agree to this resolution constituted improper interference with his relationships with the Trans and Beaumont. *See* ECF No. 23, Counterclaim at ¶¶ 74-83.

McKeen does not allege, however, how his relationships with the Trans or Beaumont were actually breached or terminated. He alleges in a conclusory manner that Hardiman "caused a breach," but acknowledges that he "finally received the settlement check" from Beaumont on November 26, 2019. *Id.* at ¶ 70, 78. At most, Hardiman's lien and his refusal to release it caused a delay in McKeen's receipt of his contingency fee. Although McKeen may have been injured by the delay, he does not

allege how his *relationships* with the Trans or Beaumont were breached or terminated. These relationships are based upon contracts – a settlement agreement and contingency fee agreement – and McKeen does not allege that these agreements were breached or that the relationships were otherwise terminated. *See* ECF No. 23, Counterclaim at ¶¶ 75-76. Rather, the agreements were admittedly fulfilled when Beaumont tendered the settlement check and McKeen received his contingency fee. *Id.* at ¶ 70. The failure to allege a breach or termination of his business relationships or expectancies with the Trans or Beaumont is fatal to McKeen's tortious interference claim.

In addition, McKeen has not sufficiently alleged improper conduct on the part of Hardiman. "[I]n order to succeed under a claim of tortious interference with a business relationship, the plaintiffs must allege that the interferer did something illegal, unethical or fraudulent." *Dalley*, 287 Mich. App. at 324. Hardiman's lien was based upon his alleged right to payment under the referral agreement and is not alleged to be improperly instituted. *See* ECF No. 27 at PageID 338. His refusal to release a proper lien, based on an offer short of payment, is not the type of "illegal, unethical, or fraudulent" conduct required to allege tortious interference. Although McKeen argues that Hardiman's failure to release the lien was

-7-

unreasonable, such actions do not rise to the level of improper conduct. *See Dalley*, 287 Mich. App. at 324 (neither filing groundless lawsuit nor seeking temporary restraining order constituted improper conduct). Accordingly, the court will dismiss McKeen's tortious interference claim.

### III. Abuse of Process

McKeen alleges that Hardiman's failure to timely release his lien constituted an abuse of process. To state a claim for abuse of process, a plaintiff must allege (1) the existence of an ulterior purpose; and (2) "an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981). Abuse of process "is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Id.* at 30 n.18; *see also Three Lakes Ass'n v. Whiting*, 75 Mich. App. 564, 571 (1977).

> Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. *There is, in other words, a*

> *form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.*

*Id.* at 573 (quoting Prosser, Torts (4th ed.), § 121, p. 857) (emphasis added). In *Three Lakes*, the Michigan Court of Appeals found that the plaintiff stated a claim for abuse of process by alleging that the defendant filed an action without intending to accomplish "the ostensible purpose of the suit (to recover damages)" but rather "as a means to coerce plaintiff to give up entirely all opposition to the condominium project." *Id.* at 570. The ulterior purpose was demonstrated by defendant's act of offering to dismiss the lawsuit, without payment, if the plaintiff ended all opposition, including lawful opposition, to the condominium project.

McKeen contends that Hardiman's lien was used for the ulterior purpose of "tying up" the settlement funds due to McKeen and the Trans. The imposition of the lien, in itself, does not constitute abuse of process because an "action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Dalley*, 287 Mich. App. at 322 (quoting *Friedman*, 412 Mich. at 31). Further, "the ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business." *Id.* at 323.

The alleged ulterior purpose – tying up the settlement funds – is not collateral to the purpose of Hardiman's lien, which was to obtain payment of his referral fee. Hardiman's alleged refusal to release the lien, presumably to put pressure on McKeen to pay the referral fee, is not outside of that objective. Although McKeen claims that Hardiman unreasonably refused to accept his solution of an escrow account, such allegations "depict nothing inconsistent with the zealous representation of claims that is inherent in our adversary system and which is properly governed by the Michigan court rules." *Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n No. 1 & No. 2*, 133 Mich. App. 671, 681-82 (1984). "[E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created." *Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381, 389 (E.D. Mich. 1982) (citation omitted).

Further, McKeen does not allege an act showing that Hardiman attempted to extort something from him separate and apart from the payment of the referral fee. *See Young*, 133 Mich. App. at 681-82 ("[T]he record does not reveal any act by the defendants outside of the formal use of process to extort or otherwise oppress plaintiffs."); *Spencer v. Armstrong*, 2004 WL 1227657, at *2 (Mich. App. June 3, 2004) ("Plaintiffs

did not allege an act showing that defendants attempted to extort something from plaintiffs separate and apart from the relief sought in the various legal proceedings."). McKeen has failed to state a claim for abuse of process.

IV. Declaratory Judgment

McKeen seeks a declaratory judgment that Hardiman is not entitled to a referral fee under the agreement and that if he is entitled to any fees, "he is disgorged of any right to those fees due to his unethical behavior and breaches of duties." ECF No. 23, Counterclaim at ¶ 94. Hardiman argues that the court should dismiss the declaratory judgment claim because it is merely a "mirror image" of his breach of contract claim and is redundant. Courts have dismissed declaratory judgment counterclaims as redundant when the counterclaims would be rendered moot by the adjudication of corresponding claims in the complaint. *See Malibu Media, LLC v. Ricupero*, 705 Fed. Appx. 402, 405-406 (6th Cir. 2017) (affirming dismissal of defendant's redundant "mirror image" copyright counterclaim, which would necessarily be resolved by the adjudication of the plaintiff's copyright claim). "When a counterclaim merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose." *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. 1987)

-11-

(table). "The mirror-image rule applies only to claims that 'exactly correspond' such that resolution of one claim would entirely dispose of the other claim." *Orleans Int'l, Inc. v. Mistica Foods, L.L.C.*, 2016 WL 3878256, at *3 (E.D. Mich. July 18, 2016) (citation omitted).

McKeen contends that his declaratory judgment claim is not the "mirror image" of Hardiman's breach of contract claim because McKeen seeks a declaration that Hardiman is not entitled to any fees, whether under a contract or equitable theory of recovery. At this early stage of the litigation, it is unclear whether McKeen's declaratory judgment claim "exactly corresponds" to Hardiman's breach of contract claim. Unless there is "no doubt" that the counterclaim will be rendered moot by the adjudication of the complaint, "the safer course" is for the court to deny the motion to dismiss. *Pettrey v. Enter. Title Agency, Inc.*, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006).

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Hardiman's motion to dismiss the counterclaim (ECF No. 25) is GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.

Dated: April 10, 2020

                                              s/George Caram Steeh
                                              GEORGE CARAM STEEH
                                              UNITED STATES DISTRICT JUDGE